THE STATE, DEFENDANT IN ERROR, v. FRANK M. BLACK ET AL., PLAINTIFFS IN ERROR.

Submitted March 19, 1914—Decided January 11, 1915.

1. Upon the trial of an indictment for assault and battery it is not necessary, for conviction, to show that the accused inflicted any bodily injury upon another. If he in anywise aided, encouraged or abetted others in committing the offence, he may properly be convicted as a principal.
2. An objection that a defendant in a criminal prosecution had no opportunity to interpose challenges to the grand jury which indicted him, can only be taken advantage of by demurrer, or a motion to quash before the trial jury was sworn, and is not a good ground for reversal after a conviction.
3. Such an objection, even if it had been made in due time and form, is without legal force. *State* v. *Lang*, 75 *N. J. L.* 1, 502, is controlling.
4. If a man called upon to defend himself against an adversary continues his counter-attack after the apparent necessity for self-defence has ceased, he thereby becomes an aggressor.

---

On error to the Sussex County Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiffs in error, *Henry C. Hunt* and *Henry Huston*.

For the defendant in error, *William A. Dolan,* prosecutor of the pleas.

The opinion of the court was delivered by

KALISCH, J.   Frank Black, Collins Black, Leo Black, Albert Bosler, John Curts and William Trimberth, were convicted in the Sussex County General Quarter' Sessions upon an indictment charging them jointly with an assault and battery on one Carl Van Etten.

The assault was the result of a controversy extending over a period of several years between the members of the Black family and Van Etten concerning the right of the Black family to maintain a gate at a point where a by-road leading to and from Van Etten's house and farm joins a road called the "River Road."

From the evidence in the case it appears that the by-road extends over the land of Alice Black, the mother of Frank, Collins and Leo Black, and in which by-road Van Etten had an easement to go to and from his house and farm.   It further appears that when Van Etten bought the property in 1894, there was a gate at the terminus of the by-road where it joins the public road.   This gate according to the testimony in the cause appears to have been maintained by the Black's.

Although it appears in the case that a suit was brought by Alice Black against Van Etten in the Court of Chancery to enjoin him from removing the gate and which resulted in a temporary restraining order, the outcome of this litigation does not clearly appear.   There was introduced in evidence the minutes of a trial, had in the Sussex County Circuit Court, in an action brought by Alice Black against Van Etten, for damages for breaking down the gate, but they are not printed in the record and therefore throw no light upon the controversy.

But for the purposes of this case it may be assumed that Alice Black was the owner of the gate and had the legal right to maintain it at the place where it was placed.   This assumption is most favorable to the plaintiffs in error and seems to

have been the chief ground work upon which the defence was based.

Acting upon the theory that Alice Black had no legal right to maintain a gate at that place and to keep it closed, Van Etten, who was returning home in a wagon one evening in the month of July, 1911, with his wife and a man named Warner, found the gate closed, took an ax and began to demolish it, when he was set upon by the plaintiffs in error, who endeavored to prevent him, and when he attempted to strike Frank Black with the ax, wrested the weapon from him, and then commenced to beat him. As has been already pointed out, Frank M., Collins and Leo Black are the sons of Alice Black. William Trimberth is the son-in-law, and Bosler and Curts were persons in her employ.

The case is before us on a strict bill of exceptions. The first point made is that the court erred in denying the motion to direct an acquittal of John Curts.

The record discloses that after the state rested its case a motion was made by defendant's counsel "that John Curts be acquitted at this time because of the fact that it is not proven that he inflicted any injury to the plaintiff Van Etten," which motion was denied by the court. An exception was taken, but it does not appear to have been signed by the judge. It has therefore no legal significance. It does not appear that at the end of the case the motion to direct an acquittal was renewed. It may not be out of place to state here that even if the motion had been renewed at the end of the case it would not have availed Curts. The motion is one addressed to the discretion of the court and the action of the court is not reviewable on a strict bill of exceptions. *State* v. *Jaggers,* 71 *N. J. L.* 283.

But even if the exception were properly before us, the ground upon which it is rested, as a legal proposition, is faulty. It was not necessary that it should appear that Curts had inflicted any injury upon Van Etten in order that he may be found guilty of an assault and battery. If he in anywise aided, encouraged or abetted the others he could be

properly convicted of an assault and battery. There was some proof in the case which tended to establish that Curts prevented one Warner from going to the assistance of Van Etten, while he, Van Etten, was being assaulted. From this circumstance alone a jury might have reasonably inferred that Curts was aiding and abetting the others in their assault upon Van Etten.

The second point urged as a ground for reversal deals with the weight of the evidence, and therefore will not be considered in a review upon error, upon well recognized principles, too firmly established to need the citation of any authority.

It is also urged as a ground for reversal "that the alleged offence was committed after the grand jury that returned the indictment was selected and sworn, without opportunity to the defendants to interpose challenges to the grand jury."

This objection could only have been taken advantage of by a demurrer or motion to quash the indictment before the jury was sworn. 2 *Comp. Stat.* 1910, *p.* 1834, § 44; *Mead* v. *State,* 53 *N. J. L.* 601; *Schuster* v. *State,* 62 *Id.* 521; *State* v. *Sharkey,* 73 *Id.* 491; *State* v. *Flynn,* 76 *Id.* 473; *State* v. *Webber,* 77 *Id.* 580; *State* v. *Alderman,* 81 *Id.* 519; *State* v. *Merkle,* 82 *Id.* 172; *State* v. *Unsworth,* 84 *Id.* 22; 85 *Id.* 237.

The record discloses that no such proceeding was taken and therefore the question attempted to be raised thereunder is not properly before us.

But even though the question had been properly raised, it was held in *State* v. *Lang,* 75 *N. J. L.* 1, 502, not to affect the validity of the judgment, which decision is controlling.

The fourth assignment of error embraces two distinct legal propositions following an exception to a refusal to charge a request of the same character. This has been held to be faulty. *Donnelly* v. *State,* 26 *N. J. L.* 463.

But nevertheless we have examined the question presented.

The record shows that the judge substantially charged the first part of the request. That part of the request which he

refused to charge reads as follows: "Further I would ask the court to charge the jury that if Carl Van Etten did attack Frank Black with an ax, which is a deadly weapon, and without any provocation, and Collins Black saw this, he had a right to make the attack in defence of his brother, and that this assault is not limited to the use of force only so long as the necessity for self-defence exists, but he had the right to attack the aggressor within the limits of human nature as affected by the provocation." We think this request was properly refused.

If a party called upon to defend himself against an attack continues it after the apparent necessity for self-defence has ceased, he thereby becomes an aggressor. This was the settled doctrine at common law. *Fost. C. L.* 278; *Regina* v. *Driscoll,* 41 *E. C. L.* 120; 3 *Cyc.* 1047, *note* 43.

The subject is not open to debate in this state, for in *State* v. *Bonfiglio,* 67 *N. J. L.,* Chief Justice Gummere, speaking for the Court of Errors and Appeals (on *p.* 245), says: "Here a man may protect himself, even to the extent of taking the life of his adversary, when that act is or reasonably appears to be necessary in order to preserve his own life or to protect himself from serious bodily harm."

To give countenance to the doctrine embraced in the proposition refused to be charged by the court below, would be to sanction what the chief aim of the law is to prevent, that is, persons avenging their own wrongs by taking the law into their own hands.

The judgment will be affirmed.